# CHARLESTON.

STATE *ex rel.* J. W. COPLEY *et al.* v. COUNTY COURT OF
MINGO COUNTY.

Submitted November 4, 1918.    Decided November 4, 1918.

1. ELECTIONS—*Registrars of Voters—List of Voters—Statute.*

    The clause of sec. 98a (6) of ch. 3 of Barnes' Code of 1918, requiring registrars of voters to sit together on two designated days, between the special session of the county court held on the first Monday in the month next preceding a general election and its special session held on the Tuesday next preceding such election, for amendment, correction and completion of the registration of voters in their precincts, does not authorize one of them to put names of voters on his list without the concurrence and assent of the other. (p. 61).

2. SAME—*List of Voters—Disagreement Between Registrars.*

    If, in the case of disagreement between the registrars at such sitting, names are so put on one of the lists and not on the other, the county court, at its special session subsequently held, may strike them off, without notice, and so make the lists agree with each other and truly state the legal result of the registration. (p. 61).

Mandamus by the State, on relation of J. W. Copley and others, against the County Court of Mingo County and others.

*Writ refused.*

*Jno. S. Marcum* and *A. B. York,* for relators.
*S. D. Stokes,* for respondents.

POFFENBARGER, PRESIDENT:

The County Court of Mingo County, at its special session held on the Tuesday next preceding the general election of 1918, having struck from one of the registration books of each of two precincts, the names of numerous persons, put on by one registrar only, at the sittings of registrars after the revision of the registration lists by the County Court at its session held on the first Monday in October, 1918, under his claim that they were legal voters and entitled to be registered and that the other registrar or the County Court

was required to copy them in the other list, the relators applied to this court for a writ of mandamus requiring the court to reconvene and restore the names.

If the names in question had been put on the list by one registrar before the session of the County Court held on the first Monday in October, the provision in sec. 98a (3) of ch. 3 of Barnes' Code of 1918 would apply and might sustain the position assumed by the relators. That section contemplates such registration before that session, for it says the court shall cause the names to be copied in the other list "at the sittings, for the purpose of completing and revising the registration lists." The court is not authorized to make a general revision of the list at the session held on the Tuesday next preceding the election. It can then only add the names of voters omitted from the list or coming of age since the making up thereof, who shall appear in person and make application for registration . This work is not the general revision contemplated and authorized to be made at the previous session held on the first Monday of the month.

No authority is conferred upon one registrar to put on names without the concurrence and assent of the other, at their sitting between the two terms of court. On the contrary, the terms of the clause of sec. 98a (6) of said chapter, providing for such sitting, clearly indicate legislative purpose to require them to concur, for they must make out two alphabetical lists and no authority is given one to list names not listed by the other, nor is either required to copy names listed by the other. If they cannot agree as to any person, his name must be left off and he must apply to the county court for registration, at its session subsequently held. Any other interpretation would make the statute work absurd and unjust results. If names could be so put on by a single registrar, he could, if so disposed, put on any number of names of persons not entitled to vote, and they could not be struck off for lack of time to give the required five days notice and hear and consider the evidence.

As the names in question were put on without authority, the persons represented by them were not legally registered, and the court had power to strike them from the single lists

in which they appeared, to the end that election officers might not be confused, misled or annoyed by them.

Under this interpretation of the statute, the writ prayed for was refused.

*Writ refused.*